**UNITED STATES of America,**
**Plaintiff,**

v.

**Styles TAYLOR and Keon Thomas, Defendants.**

**No. 2:01–CR–0073–AS.**

United States District Court,
N.D. Indiana,
Hammond Division.

June 10, 2004.

Phil Benson, Hammond, Pro se, Brunswick, GA, C. Anthony Ashford, Hammond, IN, for Plaintiff/Petitioner.

David Vandercoy, Valparaiso, IN, Ihor Alexander Woloshansky, Merrillville, IN, John E. Martin, Hammond, IN, for defendant Taylor.

Keith A. Spielfogel, Scott J. Frankel, Chicago, IL, Jane Ann Himsel, Indianapolis, IN, for defendant Thomas.

## ORDER

ALLEN SHARP, District Judge.

This matter is before the Court on Defendant Keon Thomas's Objections to Personality Test of Thomas by Government Expert [DE 651]. The Court heard oral argument by all parties on the issues raised in Defendant's motion at the hearing held on May 27, 2004. For the following reasons, Defendant Thomas's Objections to Personality Test of Thomas by Government Expert is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

On March 31, 2003 Defendant Keon Thomas filed a Notice of Intent to Present Expert Evidence Under Rule 12.2(b) in which he advised the Government that he intends to introduce expert evidence relating to his mental condition and developmental history. Specifically, Defendant Thomas has notified the Government that he intends to introduce expert evidence regarding developmental history and mental condition relating to substance abuse during the sentencing phase, should one become necessary. Further, Thomas informed the Government that one of the defense experts had performed certain mental health tests regarding substance abuse on Thomas.[1]

In response to a motion filed by the Government pursuant to F.R.Crim.P. 12.2(c)(1)(B) the Court ordered Defendant Thomas to provide the identities and qualifications of the mental health experts who will testify or whose opinions will be relied up on the issue of Thomas's mental condition as it relates to Thomas's notice of his intention to introduce expert evidence relating to his mental condition on the issue of punishment. Moreover, the Court ordered Thomas to submit to a mental examination by the Government's mental health expert and outlined the procedures to be used regarding the testing and filing of the expert's reports. These procedures were put in place to impose the necessary safeguards to preserve Defendant's Constitutional rights while at the same time afford the Government a meaningful right of rebuttal on mental health issues.

Included in these procedures is the following provision:

12. The Defendant shall identify any such tests to which he objects .... [i]f a dispute exists which the Government and the defense cannot resolve, the parties shall notify the Court and a hearing will be held .... [n]o mental health testing may be performed by the Government's expert until there is a final decision as to which tests are to be conducted by the Government's expert. In the event of such an unresolved conflict, nothing in this paragraph shall create a preference in favor of the Government or a burden on the Defendant at a hearing conducted pursuant to this paragraph.

In the motion presently before the Court, Defendant Thomas objects to the tests which the Government has identified

---

1. Defendant Thomas's Notice of Intent to Present Expert Testimony Under Rule 12.2(b) listed the following tests as having been performed by defense expert on Thomas: Michigan Alcoholism Screening Test; Drug Abuse Screening Test; and Substance Abuse Subtle Screening Test.

that it wants its mental health expert(s) to perform on Thomas. Specifically, Thomas objects to the proposed Government testing on two grounds: (1) that Rule 12.2 is unconstitutional because it violates due process and a defendant's Fifth Amendment rights; and (2) the testing violates the limited access provided to the Government for mental health testing under Fed. R.Crim.P. 12.2.

### Defendant's Constitutional Challenge

■ In support of his constitutional challenge, Thomas relies on the holding in *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359, to argue that Rule 12.2 is unconstitutional since it allows for a defendant to be compelled to undergo testing—in essence testifying against himself—and thus violates a defendant's Fifth Amendment rights. In *Estelle,* the Supreme Court held that the government cannot introduce psychiatric testimony in the penalty phase if the defendant was subjected to the mental health examination without waiving his right to counsel and without being given his Miranda warning. *Estelle,* 451 U.S. at 462, 101 S.Ct. at 1872. The *Estelle* case involved a defendant that did not introduce psychiatric evidence at trial, nor had he expressed an intention to do so. Regardless, the trial court ordered him to submit to a mental health examination, and the prosecution presented information garnered from the examination to convince the jury to impose a sentence of death. *Id.* at 466, 101 S.Ct. at 1874.

The case before the Court is distinguishable from *Estelle* since, unlike the defendant in *Estelle,* Thomas has declared his intention to introduce expert evidence regarding his mental health as it relates to the issue of punishment in his Notice of Intent. [DE 608]. Moreover, unlike *Estelle,* this Court only ordered an examination of Thomas as a result of his indication that he plans to introduce mental health testimony, therefore preventing the Fifth and Sixth Amendment issues considered in *Estelle.*

Faced with similar issues, other courts have implemented safeguards to preserve a defendant's constitutional rights pursuant to *Estelle,* while at the same time allowing the Government a meaningful right of rebuttal on mental health issues. In one such case, *United States v. Vest,* 905 F.Supp. 651 (W.D.Mo.1995), the district court explained the need to address both the protection of a defendant's constitutional rights and the Government's right to rebut as follows:

> "[d]efendants may, in any and all circumstances exercise their constitutionally-guaranteed rights". However, exercise of [those] rights does not provide an unrestrained free-for-all for death penalty defendants. If a defendant elects, with advice from counsel, to put his mental status into issue in the penalty phase, then he has waived his right to refrain from self-incrimination arising from mental health examination, and there is no Fifth Amendment implication. If a defendant elects to present mitigation testimony addressing his mental status, then the government is free to rebut such testimony. Unless the Government is allowed to conduct its own mental health examination, it may be deprived "of the only effective means it has of controverting ... proof on an issue that [defendant has chosen to] interject into the case."

*Id.* at 653 (quoting *Estelle,* 451 U.S. at 465, 101 S.Ct. at 1874); *see also United States v. Beckford,* 962 F.Supp. 748 (E.D.Va.1997)(protection provided by the Fifth and Sixth Amendments ceases when a defendant indicates that he intends to introduce mental health evidence in the penalty phase of a capital case and defendant made that decision upon advice of counsel).

In sum, the holding of *Estelle* instructs that a defendant who neither initiates mental health testing not attempts to introduce any mental health expert evidence may not be ordered to respond to a psychiatrist if "his statements can be used against him at a capital sentencing hearing." *Estelle*, 451 U.S. at 468, 101 S.Ct. at 1876. Thus "a court cannot simply require a defendant to undergo psychiatric examination if his statement can be used against him in a penalty phase at the Government's own initiative." *Beckford*, 962 F.Supp. at 761. However, *Estelle* "does not prohibit the issuance of an order requiring a defendant to respond to the Government's psychiatrist or psychologist *if the defendant's statements cannot be used against him at sentencing unless and until the defendant actually introduces mental health evidence in mitigation of the death penalty at that phase of the proceedings.*" *Id.*

The Court finds that while requiring a defendant to undergo a psychiatric examination may in some circumstances infringe on a defendant's rights under the Fifth and Sixth Amendments, in this case Thomas' rights are not infringed by this Court's Order directing him to submit to a mental health exam conducted by the Government's mental health expert since he has indicated that he intends to introduce mental health evidence during the penalty phase. Moreover, the Court's Order of April 5, 2004, provides safeguards to ensure that Thomas' statements cannot be used against him at sentencing hearing unless and until he actually introduces mental health evidence in mitigation of the death penalty at that phase of the proceedings Thus, Thomas is required to comply with the procedures outlined in this Court's Order of April 5, 2004 regarding the testing and filing of the expert's reports.

### Thomas' Challenge to Government's Proposed Tests

Defendant Thomas asserts a second objection to the Government's proposed testing. Thomas argues that the proposed testing violates the limited access provided to the Government for mental health testing under Fed.R.Crim.P. 12.2. In his Motion, Thomas contends that the Government should be precluded from testing him because no mental health testing has been performed on Thomas by Defendant's expert. This position seems to contradict the position Thomas took at the hearing on this issue[2] as well as the Notice he has filed previously in this case.[3] During oral arguments, Thomas acknowledged his intention to present mental health evidence, (Tr., at p. 13), but argued against the specific tests that the Government proposed to conduct. In other words, Thomas recognized that under the terms of this Court's Order of April 5, 2004 and Rule 12.2, the Government's mental health experts could test Thomas but argued that the Government's tests had to be a parallel exploration to the exams conducted by defense experts regarding substance abuse. (Tr., at p. 31).

Based on the Notice previously filed by Thomas, as well as his statements to the

---

**2.** The Court notes that it requested Defendant Thomas to file written objections after Defendant presented oral objections at the hearing. In response, Defendant filed the motion at bar.

**3.** In addition to his "Notice of Intent to Present Expert Testimony Under Rule 12.2(b)," Thomas' "Motion to Modify Court's Order Regarding Mental Condition Testing" filed on February 23, 2004, advised "the Government and the Court that he has retained two mental health professionals to assist in the preparation of his defense, and expects that at least one of them may rely on psycho-social testing in developing his opinion regarding Defendant Thomas' background and mental condition." *Id.*

Court in oral and written submissions, the Court finds that Thomas has given notice that he intends to present expert mental health evidence in the event this matter proceeds to a sentencing phase. Thus, pursuant to this Court's Order of April 5, 2004, Thomas shall be examined by the Government's mental health expert and both the Government and Defendant's experts are bound by the provisions contained in that Order regarding the testing, filing of all reports, and the affect of withdrawal of notice.

### Government's Proposed Tests

The Court now turns to the four tests the Government has identified that its expert(s) wish to perform on Thomas. The Government has informed Defendant Thomas that it wishes to utilize the following tests on Thomas for its expert's mental health testing: (1) Minnesota Multiphasic Personality Inventory; (2) Personality Assessment Inventory; (3) Millon Clinical Multiaxial Inventory; and (4) Interview Schedule for the Psychopathy Checklist-Revised.

■ Thomas argues that these tests are not tests at all, but rather inventories or checklists designed to indicate personality disorders and not mental conditions—especially not mental condition related to substance abuse. (Tr., at pp. 29–31). During oral argument, Thomas disputed the relevance of the Government's proposed tests in light of the limited mental health evidence Thomas's intends to introduce. Thomas argues that the Government must be limited to a parallel testing of substance abuse rather than allowing the Government to use Thomas' limited notice as an open door for any type of mental testing. The Court agrees.

■ The Court takes issue with one of the proposed tests in particular. In recent years, the reliability of the Interview Schedule for Psychopathy Checklist-Revised ("PCL–R") has been called into question as an indicator of a defendant's future dangerousness. Specifically, following an extensive review of literature addressing institutional violence and the PCL–R that concentrated on the use of the PCL–R in capital sentencing proceedings, John F. Edens, a psychologist with extensive experience in the area of risk assessment concluded, "the position that PCL–R scores for any one offender provide much useful information regarding his relative or absolute risk for future institutional violence while incarcerate clearly is untenable...." Edens, J. F., Petrila, J., & Buffington–Vollum, J.K. (2001) *Psychopathy and the death penalty: Can the Psychopathy Checklist–Revised Identify Offenders Who Represent "A Continuing Threat to Society?"* JOURNAL OF PSYCHIATRY AND LAW, 29:433–481; *see also* "Edens, J.F., (Oct.2001) *Misuses of the Hare Psychopathy Checklist -Revised in Court: Two Case Examples"* JOURNAL OF INTERPERSONAL VIOLENCE, Vol. 16, No. 10, 1082–1093; "Declaration of Thomas V. Ryan, Ph.D, ABPP, *United States v. Stitt,* Cause No. 298 CR 47 (E.D.Va.) Document No. 175, filed March 18, 2004. Thus, due to the uncertainty of the validity and reliability of the PCL–R as it is used in capital sentencing hearings, the Government and any of its experts is prohibited from utilizing this test in evaluating Defendant Thomas.

Turning to the remainder of the proposed tests, the Court finds that the Government may utilize these tests, or any other tests, only to the extent that the tests contain testing scales for substance abuse. The Government will be barred from introducing any materials that are outside the scope of mental health testing as it relates to substance abuse. The Government's mental health expert(s) shall follow the procedures issued in this Court's Order of April 5, 2004, in filing their expert reports.

## CONCLUSION

For the foregoing reasons, Defendant Keon Thomas's Motion to Modify Court's Order Regarding Mental Condition Testing is **GRANTED IN PART and DENIED IN PART**.

**SO ORDERED.**